**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FREDDY WELCH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-2295** |
| **DARRELL VANNOY, WARDEN** | **SECTION "E"(4)** |

## REPORT AND RECOMMENDATION

On May 8, 2020, the District Court dismissed the captioned 28 U.S.C. § 2254 petition filed by Freddy Welch ("Welch") as time-barred. ECF Nos. 14, 15. The United States Fifth Circuit Court of Appeals denied Welch a certificate of appealability on April 30. 2021. ECF No. 21. However, on October 31, 2022, the District Court granted Welch's motion for relief from judgment, reopened the matter, and referred the petition "to the Magistrate Judge for consideration of Petitioner's petition for writ of habeas corpus on the merits." ECF Nos. 25, 26.

Construing the referral to be pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**, the Magistrate Judge may conduct hearings, including an evidentiary hearing if necessary, and shall submit proposed findings and recommendations. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* **28 U.S.C. § 2254(e)(2) (2006)**.[1]

## I.    Factual and Procedural Background

A thorough recitation of the state court procedural history and facts underlying the charges against Welch were presented in detail in the Court's previous Report and Recommendation. ECF

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

No. 12.   For ease of reference, that factual and procedural history is repeated here and supplemented where necessary.

Welch is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On April 17, 2007, Welch was indicted by a Terrebonne Parish Grand Jury on one count of second degree murder and one count of attempted second degree murder.[3]  Welch initially entered a plea of not guilty to both counts.[4]

The facts as determined at trial reflect that, on June 9, 2006, at about 6:00 a.m., two unidentified men entered the home of Kenneth Garner, Jr., and his girlfriend, Teamaya Lewis, on Prince Collins Street in Houma, Louisiana.[5]  The two men walked into the bedroom where Garner, Lewis, and two of her young children were sleeping in the same bed.  Lewis was awakened when one of the men, who was larger with dreadlocks and was standing on Garner's side of the bed, yelled out wanting to know where the "work" (slang for drugs) was.  A second man, who was tall and skinny, was standing on Lewis's side of the bed.  Both men were wearing black shirts, face coverings, and were armed with guns.

Garner told the first, larger man to "chill out" and that the "work" was not in the house. The man next to Lewis placed a pillow over her head.  When Lewis tried to reach the phone, the man grabbed it.  The larger man on Garner's side of the bed struck Garner with his gun and then shot him.  The two men then ran out of the bedroom.

---

[2] ECF No. 3.

[3] St. Rec. Vol. 1 of 4, at 2, Indictment, 4/17/07; *id.*, at 3, Grand Jury Return, 4/17/07.  The indictment was amended on September 4, 2007, to broaden the second degree murder charge to felony murder.  St. Rec. Vol. 1 of 4, at 37, Minute Entry, 9/4/07; St. Rec. Vol. 2 of 4, at 1196-98, Hearing Transcript, 9/4/07.

[4] St. Rec. Vol. 1 of 4, at 5, Minute Entry, 4/8/07; Minute Entry, 9/4/07.

[5] The facts are taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  *State v. Welch*, 30 So. 3d 284 (La. App. 1st Cir. 2010) (Table); *State v. Welch*, No. 2009KA1609, 2010 WL 532386, at *1-4 (La. App. 1st Cir. Feb. 12, 2010); St. Rec. Vol. 3 of 4, at 1210-14, 1st Cir. Opinion, 2009-KA-1609, 2/12/10.

Lewis jumped from the bed and ran toward the front door.  As the two men were opening the front door to leave, the larger man who shot Garner turned and fired another shot at her but missed.  Garner died from his wound.

The Houma Police Department developed three suspects, Rodney Castle, Corey Stovall a/k/a "Co-Black," and Welch.  The three suspects fled Louisiana shortly after Garner was killed.

Stovall, who was 25 years old, went to Houston, Texas.  He also was tall and skinny and wore long dreadlocks.  Stovall previously had lived with Lewis and Garner and was told to leave after getting into an altercation in the neighborhood.  Stovall was killed in August of 2006, about a year and one-half before Welch's trial.

Welch initially went to Houston, where he had family displaced by Hurricane Katrina.  He soon moved to Phoenix, Arizona.  While there, he used the alias Terry Wright and was eventually arrested on other, unrelated charges.

Castle, who was 17 years old, went to Detroit, Michigan.  He returned to Houma and turned himself in to police.  Houma Police Detective Travis Theriot questioned Castle, who implicated Welch and Stovall in in the murder of Garner.  Castle also picked out Welch and Stovall from photographic lineups.

Castle told the police that he had grown up with Stovall but did not meet Welch until the night of the murder.  After taking him on a trip to buy ecstasy, the two men took Castle on a robbery.  Welch had Castle drive them to the area of the house and remain in the car.  A short time after Welch and Stovall exited the car, Castle heard one or two gunshots, and Stovall and Welch ran back to the car.  Castle started to drive off when Welch pointed a gun at him and told him to stop the car.  Castle was able to stop and jump from the car.  He ran away to hide behind a nearby

trailer.  Based on the information received from Castle, Detective Theriot had Welch extradited

back to Terrebonne Parish where he was indicted for Garner's murder.

The attempted second degree murder count was severed and eventually, a *nolle prosequi*

on that charge was entered.[6]  However, on February 19 through 22, 2008, Welch was tried before

a jury for the second degree murder of Garner and found guilty as charged.[7]  At a hearing held

March 10, 2008, the Trial Court denied Welch's motions for a new trial and for post-verdict

judgment of acquittal.[8]  During the hearing, Welch waived legal delays, and the Court sentenced

him to life in prison without benefit of parole, probation, or suspension of sentence.[9]

Welch was granted an out-of-time appeal on October 10, 2008.[10]  His appointed appellate

counsel asserted that the evidence was insufficient to support the verdict.[11]  On February 12, 2010,

the Louisiana First Circuit affirmed Welch's conviction finding no merit in the claim.[12]

The Louisiana Supreme Court denied Welch's related writ application without stated

reasons on October 1, 2010.[13]  Welch's conviction was final 90 days later, on December 30, 2010,[14]

because he did not file for review with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d

---

[6] St. Rec. Vol. 1 of 4, at 359, Motion to Nolle Prosequi, 9/18/08; St. Rec. Vol. 2 of 4, at 1141, Sentencing Transcript, 3/10/08.

[7] St. Rec. Vol. 1 of 4, at 165, Trial Minutes, 2/19/08; *id*., at 265, Trial Minutes, 2/20/08; *id*., at 279, Trial Minutes, 2/21/08; *id*., at 345, Trial Minutes, 2/22/08; *id*., at 283, Jury Verdict, 2/22/08; *id*., at 566, Trial Transcript, 2/19/08; St. Rec. Vol. 2 of 4, at 566, Trial Transcript, 2/20/08; *id*., at 756, Trial Transcript, 2/21/08; *id*., at 985, Trial Transcript, 2/22/08.

[8] St. Rec. Vol. 1 of 4, at 355, Sentencing Minutes, 3/10/08; *id*., at 348, Motion for New Trial, 3/10/08; *id*., at 349, Trial Court Order, 3/10/08; *id*., at 350, Motion to Set Aside Jury Verdict/Motion for Post-Verdict Judgment of Acquittal, 3/10/08; *id*., at 351, Trial Court Order, 3/10/08; St. Rec. Vol. 2 of 4, at 1130, Sentencing Transcript, 3/10/08.

[9] St. Rec. Vol. 1 of 4, at 355, Sentencing Minutes, 3/10/08; St. Rec. Vol. 2 of 4, at 1130, Sentencing Transcript, 3/10/08.

[10] St. Rec. Vol. 1 of 4, 362, Trial Court Order, 10/10/08; *id*., at 357, Motion for Out of Time Appeal, 8/25/08.

[11] St. Rec. Vol. 3 of 4, at 1226, Appeal Brief, 2009-KA-1609, 9/25/09.

[12] *Welch*, 30 So. 3d at 284; *Welch*, 2010 WL 532386, at *1; St. Rec. Vol. 3 of 4, at 1208, 1st Cir. Opinion, 2009-KA-1609, 2/12/10.

[13] *State v. Welch*, 45 So. 3d 1095 (La. 2010); St. Rec. Vol. 3 of 4, at 1206, La. Sup. Ct. Order, 2010-KO-0524, 10/1/10; *id*., at 1205, La. Sup. Ct. Letter, 2010-KO-0524, 3/9/10.

[14] The State erred in its calculation of this finality date as January 9, 2011.  *See* ECF No. 11, at 3, 9.

510, 513 (5th Cir. 1999) (period for filing for *certiorari* with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1); *see*, *Jiminez v. Quarterman*, 555 U.S. 113, 121 (2009) (when a state court grants a defendant an out-of-time appeal during state collateral review, the conviction judgment is not final for purposes of federal habeas review until the out-of-time appeal is resolved).

On January 2, 2013, Welch filed a motion for leave to file a supplemental and amended application for post-conviction relief, in which he asserted that his counsel was ineffective for failing to object and request a limiting jury instruction on other crimes evidence.[15]  The state trial court denied the motion on February 14, 2013, for lack of proof that an original application had been filed.[16]

On May 8, 2013, the Louisiana First Circuit granted Welch's related writ application and remanded with instructions for the state trial court to hold an evidentiary hearing to determine whether Welch timely filed a prior application for post-conviction relief under the applicable mailbox rule.[17]  At a June 26, 2013, hearing, the Trial Court appointed counsel to assist Welch and over the next year, continued the evidentiary hearing several times at the urging of Welch's counsel.[18]  On December 9, 2014, the Court received evidence and determined that Welch had

---

[15] St. Rec. Vol. 3 of 4, at 1277, Motion to File, 1/7/13; *id.*, at 1279, Supplemental and Amended Application for Post-Conviction Relief, 1/7/13 (dated 1/2/10).

[16] St. Rec. Vol. 3 of 4, at 1294, Minute Entry, 2/14/13.

[17] St. Rec. Vol. 3 of 4, at 1297, 1st Cir. Order, 2013-KW-0402, 5/8/13 (partial copy).

[18] St. Rec. Vol. 3 of 4, at 1304, Minute Entry, 6/26/13; *id.*, at 1316, Minute Entry, 8/28/13; *id.*, at 1327, Minute Entry, 10/30/13; *id.*, at 1336, Motion to Continue, 11/25/13; *id.*, at 1337, Trial Court Order, 11/26/13; *id.*, at 1354, Motion to Continue, 2/7/14; *id.*, at 1355, Trial Court Order, 2/10/14; *id.*, at 1377, Motion to Continue, 4/16/14; *id.*, at 1378, Trial Court Order, 4/22/14; *id.*, at 1392, Minute Entry, 6/25/14; *id.*, at 1395, Motion to Continue, 8/21/14; *id.*, at 1398, Trial Court Order, 8/26/14.

filed his original application for post-conviction relief under the applicable mailbox rule on November 21, 2011, when he handed it to prison officials for mailing to the state court.[19]

Welch then submitted a memorandum addressing his post-conviction claims:[20] (1) the State excluded from the jury venire several prospective jurors based solely on race; (2) the trial court allowed the prosecution to present other crimes evidence without conducting a hearing pursuant to *State v. Prieur*, 277 So. 2d 126 (1973);[21] and (3) counsel was ineffective for (a) failing to move for mistrial when the State admitted other crimes evidence and commented on Welch's criminal history, all admitted without a *Prieur* hearing, and (b) for failing to interview Lewis and present her favorable testimony at trial. The state court also considered the 2013 supplemental ineffective assistance of counsel claim, which urged that counsel was ineffective for failing to object and request a limiting instruction on other crimes evidence.

After receiving the State's response, on October 30, 2015, the state trial court denied the first claim of jury discrimination finding no record support and no merit in the claim.[22] The Court scheduled the remaining claims for evidentiary hearing. After numerous other continuances, the Court heard the matter on April 19, 2017.[23] On May 31, 2017, the Court denied relief on the application finding no merit in the remaining claims.[24]

---

[19] St. Rec. Vol. 3 of 4, at 1427, Minute Entry, 12/9/14; *id.*, at 1425, Mail Receipt, 11/21/11; *id.*, at 1426, Mail Request, 11/21/11.

[20] St. Rec. Vol. 3 of 4, at 1428, Memorandum in Support, 12/16/14 (dated 11/21/11); *id.*, at 1459, Application for Post-Conviction Relief, 8/13/15.

[21] Under Louisiana law, a *Prieur* hearing requires that before evidence of other crimes are introduced, the trial court must determine that the extraneous acts are probative of a real issue and that their probative value exceeds their prejudicial effect. *See State v. Taylor*, 217 So. 3d 283, 291 (La. 2016) (citing *Prieur*, 277 So. 2d at 126).

[22] St. Rec. Vol. 3 of 4, at 1456, Trial Court Judgment, 10/30/15; *id.*, at 1457, Reasons for Judgment, 10/30/15; *id.*, at 1444, State's Response, 8/11/15.

[23] St. Rec. Vol. 3 of 4, at 1535, Minute Entry, 4/19/17; *id.*, at 1556, Hearing Transcript, 4/19/17; *see also*, *id.*, at 1480, Minute Entry, 2/10/16; *id.*, at 1492, Minute Entry, 4/20/16; *id.*, at 1509, Minute Entry, 6/22/16; *id.*, at 1520, Minute Entry, 10/26/16; *id.*, at 1533, Minute Entry, 3/31/17.

[24] St. Rec. Vol. 3 of 4, at 1537, Trial Court Judgment, 5/31/17; *id.*, at 1538, Reasons for Judgment, 5/31/17.

Eventually, on February 18, 2018, the Louisiana First Circuit denied Welch's related writ application without stated reasons.[25]  On February 25, 2019, the Louisiana Supreme Court also denied Welch's subsequent writ application finding that he failed to show ineffective assistance under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).[26]  The Court further held that Welch failed to meet his burden of proof on the remaining claims.

Since that time, Welch has been granted by the state trial court, a copy of the voir dire transcript and viewing of the jury poll results from his trial.[27] Welch also moved for and was denied the opportunity for a post-conviction plea discussion for a revised sentence.[28]

## II.    **Federal Petition**

On March 28, 2019, after correction of certain deficiencies, the clerk of this Court filed Welch's federal petition for habeas corpus relief in which he asserted the following grounds for relief:[29] (1) the State excluded from the jury venire several prospective jurors based solely on race in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986); (2) the trial court allowed the prosecution to present other crimes evidence without conducting a pretrial *Prieur* hearing required by Louisiana law; and (3) he received ineffective assistance when trial counsel (a) failed to move for mistrial when the State admitted other crimes evidence and commented on Welch's criminal history, all admitted without a *Prieur* hearing, and (b) failed to interview victim Lewis and present her favorable testimony at trial.

---

[25] *State v. Welch*, No. 2017KW1525, 2018 WL 7041122, at *1 (La. App. 1st Cir. Feb. 5, 2018); St. Rec. Vol. 3 of 4, at 1599, 1st Cir. Order, 2017-KW-1525, 2/5/18.  The Court's staff contacted the Louisiana First Circuit Court of Appeal and was advised that the second writ application was submitted to that Court on October 24, 2017.

[26] *State v. Welch*, 264 So. 3d 434 (La. 2019); St. Rec. Vol. 3 of 4, at 1602, La. Sup. Ct. Order, 2018-KH-0317, 2/25/19; *id*., at 1600, La. Sup. Ct. Letter, 2018-KH-317, 2/22/18.

[27] St. Rec. Suppl. Vol. 1 of 1, Trial Court Order, 6/22/21; Motion for Voir Dire Transcript, 6/3/21 (dated 6/1/21); Trial Court Order, 5/6/21; Motion to Unseal Jury Poll Results, 4/26/21.

[28] *Id*., Trial Court Order, 8/17/22; Motion Seeking Post-Conviction Plea Agreement, 7/28/22.

[29] ECF No. 3.

Following the reopening of the case and renewed order for briefing, the State filed a response in opposition to Welch's petition acknowledging that the timeliness issue was resolved and conceding that Welch had exhausted state court review of his claims.[30]  The State urges, however, that Welch's *Batson* claim was procedurally defaulted.  In addition, the challenge to the admissibility of other crimes evidence was without merit under state law and provides no basis for this court to review the fairness of his trial where there was no error in the evidentiary rulings of the state trial court.  Finally, the State argues that the denial of relief on the ineffective assistance of counsel claim was not contrary to or an unreasonable application of *Strickland*.

In response to the State's opposition memorandum, Welch asserts that, under Louisiana law, he could not have waived a *Batson* claim if his conviction was unconstitutional.[31]  He urges that the trial transcripts be provided to him as necessary to prove the *Batson* claim.[32]  He also suggests that the court conduct a *de novo* review of his claims and direct the state courts to produce the necessary documents to prove his claim.  He also argues that it was error to allow in other crimes evidence prohibited by state law and that his counsel was ineffective for failing to object to the trial errors and move for a mistrial.

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[33] applies to Welch's petition, which is deemed filed in this Court under the

---

[30] ECF No. 28.

[31] ECF No. 29.

[32] *Id*. at 4.

[33] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

mailbox rule on March 12, 2019.[34]  The threshold questions on habeas review under the amended

statute are whether the petition is timely and whether the claim raised by the petitioner was

adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies

and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th

Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

Aside from the previously resolved issues of timeliness and exhaustion, the State asserts

that Welch's *Batson* claim is in procedural default, because the state trial court found that Welch

waived any *Batson* claim as no such claim was urged during *voir dire*.  As outlined above, the state

trial court denied Welch's *Batson* claim finding it to be both "without merit" and "waived by the

failure of the defense to assert a Batson challenge."[35]  This, however, was not the last reasoned

state court opinion.

Procedural default does not bar federal court review of a federal claim in a habeas petition

unless the <u>last</u> state court to render a judgment in the case has clearly and expressly indicated that

its judgment is independent of federal law and rests on a state procedural bar.  *Harris v. Reed*, 489

U.S. 255, 263 (1989); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997).  In Welch's case, the

Louisiana Supreme Court also provided reasons for its denial of Welch's subsequent writ

application.  The Louisiana Supreme Court held,[36] as to all claims other than ineffective assistance

---

[34] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court initially docketed Welch's deficient petition on March 12, 2019, when it was received, and it was filed March 28, 2019, when the filing fee was paid.  The official stamp of the prison legal programs department indicates that the pleading was received from Welch on May 12, 2019, the same day it was electronically mailed to the Court for filing.  ECF No. 1, at 10; ECF No. 3, at 10.   The fact that Welch later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

[35] St. Rec. Vol. 3 of 4, at 1456, Trial Court Judgment, 10/30/15.

[36] *Welch*, 264 So. 3d at 434; St. Rec. Vol. 3 of 4, at 1602, La. Sup. Ct. Order, 2018-KH-0317, 2/25/19.

of counsel, that Welch failed to meet his burden of proof under La. Code Crim. P. art. 930.2, which provides: "The petitioner in an application for post conviction relief shall have the burden of proving that relief should be granted."

The meaning of a dismissal based on La. Code Crim. P. art. 930.2 has been a point of quandary for the federal courts in Louisiana. Nevertheless, federal habeas courts have most-often found that the Louisiana Supreme Court's citation to La. Code Crim. P. art. 930.2, that also does not include reference to another ground for dismissal, is a decision on the <u>merits</u> and does not constitute, or adopt, a state procedural bar. *See*, *e.g.*, *Woodfox v. Cain*, 609 F.3d 774, 796 (5th Cir. 2010) (state court's dismissal citing La. Code Crim. P. art. 930.2 is, in the absence of evidence to the contrary, an adjudication on the merits for AEDPA purposes); *Darby v. Vannoy*, No. 19-13900, 2020 WL 5468953, at *7 (E.D. La. Aug. 14, 2020) (collecting cases), *R&R adopted by* 2020 WL 5436571, at *1 (E.D. La. Sep. 10, 2020); *see also*, *Atkins v. Hooper*, 979 F.3d 1035, 1042-43 (5th Cir. 2020) (discussing dismissal under Art. 930.2 accompanied by procedural default reference where there were multiple claims and arguments).

In Welch's case, the Louisiana Supreme Court cited only to La. Code Crim. P. art. 930.2 when addressing his claims, other than the ineffective assistant of counsel claim denied under *Strickland*. While the opinion was brief, it was no less a decision on the merits and not based on a procedural ground. *Hebert v. Rogers*, 890 F.3d 213, 221 (5th Cir. 2018) (explaining "the brevity of a state court's opinion is immaterial" to application of the AEDPA standard).

For this reason, the Court must reject the State's position that Welch's *Batson* claim is procedurally barred, and instead will address the merits of the claim.

IV.    **Standards of a Merits Review**

The standard of review under the AEDPA is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 572 U.S. at 426-27; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    Discussion

### A.    *Batson* Claim (Claim 1)

Welch alleges that, contrary to *Batson*, his constitutional rights were violated "when the prosecution excluded from the jury venire several prospective jurors solely because they were black."[37]  He also claims that, although he was granted an evidentiary hearing, he was not provided with a *voir dire* transcript to assist in proving his claim.[38]  Welch first asserted a *Batson* claim on post-conviction review in the state trial court in his December 16, 2014, memorandum.[39]

As noted above, before holding a hearing on the other claims, the state trial court found the *Batson* claim to be without merit noting that there was no record of the racial composition of the jury venire and that defense counsel had not made a *Batson* challenge during voir dire.[40]  The Louisiana Supreme Court later denied relief concluding that Welch failed to meet his burden of proof on this issue under La. Code Crim. P. art. 930.2.[41]

In *Batson*, the United States Supreme Court held that purposeful racial discrimination in the use of peremptory strikes of prospective jurors violates the Equal Protection Clause.  *Batson*, 476 U.S. at 89.  Throughout a *Batson* review, "[t]he party making the claim of purposeful discrimination bears the ultimate burden of persuasion."  *United States v. Montgomery*, 210 F.3d 446, 453 (5th Cir. 2000); *Purkett v. Elem*, 514 U.S. 765, 768 (1995) ("the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.").  In evaluating whether a petitioner has established a *Batson* violation, a three-step

---

[37] ECF No. 3-1, at 8-9.
[38] *Id*. at 10.
[39] St. Rec. Vol. 3 of 4, at 1429, Memorandum in Support, 12/16/14 (dated 11/12/11); *see also*, *id*., at 1463, Application for Post-Conviction Relief, 8/13/15.
[40] *Id*., at 1457, Trial Court Judgment, 10/30/15.
[41] *Welch*, 264 So. 3d at 434; St. Rec. Vol. 3 of 4, at 1602, La. Sup. Ct. Order, 2018-KH-0317, 2/25/19.

analysis is employed, with the first step requiring a petitioner to make a prima facie showing that a peremptory challenge has been exercised on the basis of race.[42]  *Stevens v. Epps*, 618 F.3d 489, 492 (5th Cir. 2010).

As determined by the state courts, Welch has not met his burden in the first step to demonstrate a *prima facie* case of racial discrimination.  While he claims that the State used peremptory strikes to exclude Blacks from the venire, he provides no evidence identifying the particular jurors, no evidence of the race of the excluded jurors, and no support for his allegation that the State misused its peremptory strikes.  Welch also does not offer any evidence of the racial composition of the venire itself or of the selected trial jury.

The voir dire transcript and state court record support the factual findings that there is no record of the racial composition of the jurors and that no *Batson* objection was made during voir dire.  The jury panel sheets in the record contain only names of prospective jurors and handwritten notations indicating those jurors excused for cause or by peremptory strike of a party.[43]  The transcript also only mentions juror names and confirms there was no *Batson* objection during voir dire.[44]  Welch's claim, therefore, is wholly conclusory and unsupported.  The denial of relief by the state courts was not contrary to federal law.  *Williams v. Davis*, 674 F. App'x 359, 365 (5th Cir. 2017) ("[petitioner's] arguments are simply 'too conclusory to warrant relief on *Batson* grounds.'" (citation omitted)); *Griffin v. Director, TDCJ-CID*, No. 06-256, 2007 WL 1655330, at *9 (E.D. Tex. June 7, 2007) (habeas relief not warranted when a petitioner's "allegation that *Batson*

---

[42] At the second step, the reason proffered should be deemed race-neutral unless a discriminatory intent is inherent in the prosecutor's explanation. *Williams*, 674 F. App'x at 363 (citing *Purkett*, 514 U.S. at 768).  In the third step, the court must then determine whether the petitioner carried his burden of proving purposeful discrimination. *Batson*, 476 U.S. at 98; *Miller-El v. Dretke*, 545 U.S. 231, 251-52 (2005).

[43] St. Rec. Vol. 1 of 4, at 161-64, Jury Sheets, 2/19/08.

[44] *Id.*, at 480-85, 556-562, Trial Transcript, 2/19/08.

was violated is wholly conclusory, unsupported and unsubstantiated by anything in the record."); *Bell v. Director, TDCJ-CID*, No. 03-36, 2005 WL 977771, at *6 (E.D. Tex. Nov. 2, 2005) (petitioner's *Batson* claim that a juror was improperly struck "is a conclusory allegation not supported by the record [and] insufficient to support a petition for a writ of habeas corpus."); *Eastridge v. United States*, 372 F. Supp.2d 26, 61 (D.D.C. May 26, 2005) ("Petitioners cannot establish improper application of peremptory challenges because they present no evidence of selective exclusion and cannot produce evidence of the racial composition of the venire.").

Welch also suggests that he should be given a copy of the voir dire transcript to search for support for his *Batson* claim. However, the state court record reflects that the state trial court granted Welch's motion for a copy of the voir dire transcript in 2021, which was before he returned to this federal court for post-judgment relief.[45]

Furthermore, giving Welch another copy of the transcript would not aid his cause. The state courts had the voir dire transcript when post-conviction relief was denied. This court has now reviewed the same transcript and the complete state court record. Both confirm the state courts' factual findings and conclusion that Welch's *Batson* claim is unsupported and therefore meritless.

For these reasons, the state courts' denial of relief on Welch's claim was not contrary to or an unreasonable application of *Batson*. Welch is not entitled to relief on this claim.

### B.    Other Crimes Evidence (Claim 2)

Welch claims that his Fifth and Fourteenth Amendment rights to a fair trial were violated when the state trial court allowed the prosecution to present other crimes evidence at trial without

---

[45] St. Rec. Suppl. Vol. 1 of 1, Trial Court Order, 6/22/21.

first having held a pretrial *Prieur* hearing.[46]  Specifically, Welch references the State's presentation

of evidence of his criminal record, including a charge of child prostitution in Arizona and the

illegal discharge of a weapon on New Year's Eve in Orleans Parish, Louisiana.[47]  He claims that

these matters were presented to the jury over defense counsel's relevance objection and without

notice or compliance with La. Code Evid. art. 404(B)(1) for admissibility of other crimes evidence.

He also claims that his character was not at issue and his prior criminal record should not have

been presented to the jury.[48]

In opposition, the State argues that the state courts correctly resolved that Welch's claim

was meritless under Louisiana evidentiary law since Welch and his counsel opened the door to, if

not agreed to admit, the evidence.[49]  In addition, Welch has no right to federal habeas review of

alleged errors of state law.  Further, because the state courts found that there was no error in

admitting the evidence, Welch cannot show that his trial was fundamentally unfair.

Welch asserted this claim in his state post-conviction application.  Following an evidentiary

hearing on April 19, 2017 at which Welch was represented by appointed counsel,[50] the state trial

court denied relief on May 31, 2017, with written reasons.[51]  The state trial court found that the

introduction of the evidence met exceptions to Louisiana's rule excluding other crimes evidence,

which include when the defense "opens the door" to the introduction and when the evidence is

used for impeachment pursuant to La. Code Evid. art. 609.1.  Specifically, the state trial court

found that the transcript reflected that Welch's counsel was the first to mention the illegal

---

[46] ECF No. 3-1, at 11; ECF No. 29, at 5-6.
[47] *Id*. at 13.
[48] *Id*. at 14.
[49] ECF No. 28, at 9-10.
[50] St. Rec. Vol. 3 of 4, at 1535, Minute Entry, 4/19/17.
[51] *Id*., at 1544-1545.

discharge of a weapon on New Year's Eve in opening statements and again during Welch's testimony on direct examination. Because of this, the State was allowed to inquire into that arrest.

In addition, the state trial court found that, prior to the introduction of evidence of the Arizona prostitution arrest, the court met with defense counsel and the State outside of the jury's presence. The parties agreed that the State could inquire about the fact of Welch's Arizona arrest but could not delve into the details of the arrest unless the defense opened the door. During cross-examination, the State asked Welch if he was arrested for prostitution. Welch answered yes, and then Welch continued to explain the circumstances surrounding his arrest. When the State attempted to inquire further, defense counsel objected on the grounds that this exceeded the agreement. The court overruled the objection finding that the State did not violate the agreement where Welch opened the door. The State, nevertheless, did not ask any further questions about that arrest. On these findings, the state trial court denied relief because the claim was meritless. The Louisiana Supreme Court also later denied relief concluding that Welch failed to meet his burden of proof under La. Code Crim. P. art. 930.2.[52]

To the extent Welch argues that the evidence of his prior arrests was admitted in violation of Louisiana law, that claim is not cognizable on federal habeas review. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); *Swarthout*, 562 U.S. at 219; *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). States are free to implement procedures regarding the admission of evidence, provided those procedures do not infringe on a constitutional guarantee. *Burgett v. Texas*, 389

---

[52] *Welch*, 264 So. 3d at 434; St. Rec. Vol. 3 of 4, at 1602, La. Sup. Ct. Order, 2018-KH-0317, 2/25/19.

U.S. 109 (1967).  Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.  *Swarthout*, 562 U.S. at 219; *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).

Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair.  *Lisenba v. People of the St. of Cal.*, 314 U.S. 219, 236-37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).  As the Fifth Circuit has explained, this standard is a high hurdle to overcome because "the Due Process Clause does not afford relief where the challenged evidence was not the principal focus at trial" and the complained of error was not "so pronounced and persistent that it permeates the entire atmosphere of the trial."  *Gonzales*, 643 F.3d at 430-31 (footnotes and internal quotation omitted).

Under these standards, to establish a fundamentally unfair trial, the admission of prejudicial evidence is fundamentally unfair so as to justify federal habeas corpus relief *only* if it "played a crucial, critical, and highly significant role in the trial."  *Id*. at 430 (quotation omitted).  A habeas petitioner must show that "the trial court's error had a 'substantial and injurious effect or influence in determining the jury's verdict.'"  *Hernandez v. Dretke*, 125 F. App'x 528, 529 (5th Cir. 2005) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

A due process inquiry presents a mixed question of law and fact.  *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000).  Therefore, under the applicable AEDPA standard of review, this

Court must determine if the state courts' decision is contrary to or involved an unreasonable application of Supreme Court precedent prohibiting an unfair trial.

In this case, Welch has failed to establish any error by the state trial court which would trigger review under due process standards. *Robinson v. Whitley*, 2 F.3d 562, 567 (5th Cir. 1993) (where there is no showing of error by a trial court, there can be fundamental unfairness); *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998). The state courts, including the Louisiana Supreme Court, found on post-conviction review that the admission of the so-called other crimes evidence was proper under Louisiana evidentiary rules. The Supreme Court has instructed that a state court's interpretation and application of state law "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

Because Welch has not demonstrated error in the admission of the evidence, he "has no basis for any alleged due process violation" and his trial was not fundamentally unfair. *Robinson*, 2 F.3d at 567; *Neal*, 141 F.3d at 214. Even if Welch could show some error in the evidentiary ruling, the admission of the evidence was of his own cause and not a prejudice created by the State or the state court so as to violate due process standards. Welch's counsel was the first to mention the New Year's Eve shooting. The Arizona arrest was introduced by agreement of counsel, and Welch himself provided the brief explanation of that arrest.

The record also does not show that a mention of Welch's criminal history somehow infected the trial or influenced the verdict as required to establish a due process concern. The brief references to his past arrests did not prevail during trial as reference thereto was brief.

For these reasons, Welch has not established that the denial of relief was contrary to or an unreasonable application of federal law. He is not entitled to relief on this claim.

### C.    <u>Effective Assistance of Counsel (Claim 3)</u>

Welch alleges that he was denied effective assistance of counsel when his trial counsel failed to move for a mistrial under La. Code Crim. P. art. 770(2) when the state trial court let the prosecution admit the "other crimes evidence" of his past criminal arrests before the jury without a *Prieur* hearing, and when counsel failed to interview Teamaya Lewis and present her favorable testimony that co-defendant Rodney Castle falsely implicated petitioner.  ECF No. 3-1, at 15.  He submits that he suffered extreme prejudice from the introduction of his criminal history. *Id*. at 15-16.  He also claims that Lewis told his family that she knew petitioner was not involved in the crime and she was willing to testify that petitioner was innocent.  *Id*. at 17-18.  Counsel, however, told petitioner that he did not want to make it look like the defense was picking one of the victims.

The State in opposition argues that Welch failed to establish ineffective assistance under *Srtickland* for the reasons provided by the state trial court after the post-conviction evidentiary hearing.

Following the April 19, 2017, evidentiary hearing at which Welch was represented by counsel, the state trial court issued written reasons denying Welch's post-conviction application based on the standards set forth in *Strickland* and related state case law.[53]  In its later review of Welch's writ application, the Louisiana Supreme Court held that Welch failed to meet his burden under the standards of *Strickland*.[54]

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Strickland*, 466 U.S. at 698; *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox*, 609 F.3d

---

[53] St. Rec. Vol. 3 of 4, at 1546, Reasons for Judgment, 5/31/17.
[54] *Welch*, 264 So. 3d at 434; St. Rec. Vol. 3 of 4, at 1602, La. Sup. Ct. Order, 2018-KH-0317, 2/25/19.

at 789.  Thus, under the AEDPA, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

In *Strickland*, relied on by the state courts, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *Strickland*, 466 U.S. at 687.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan*, 980 F.2d at 296.  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (1995).

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that counsel's conduct falls within a wide range of reasonable representation.  *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689).  "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at

689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bell*, 535 U.S. at 695 (quoting *Strickland*, 466 U.S. at 694); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).  Furthermore, "[t]he petitioner must 'affirmatively prove,' [and] not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  *Harrington*, 562 U.S. at 112.  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690).  The *Harrington* opinion went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas

> courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)).  The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)."  *Id*. (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

### D.    Failure to Move for Mistrial

As discussed by the state trial court on post-conviction review, Welch's trial counsel was the first to reference the New Year's Eve weapons charge, and did so for apparent trial strategy reasons.  The Court concluded there was no basis for counsel to have moved for a mistrial.

In addition, prior to the introduction of the Arizona prostitution arrest, counsel met with the state trial court and agreed to that the State could inquire about the arrest but not the details, unless the defense opened the door.  During Welch's cross-examination, the State asked about the Arizona arrest and Welch affirmed his arrest and began to explain his answer.  When the State tried to ask additional questions based on Welch's explanation, defense counsel objected.  The state court concluded that the introduction of the Arizona arrest was not prejudicial and did not warrant a mistrial or render the trial unfair.[55]  For these reasons, the Court concluded counsel was not deficient in failing to ask for a mistrial and instead chose a strategy to move on rather than to place greater emphasis on the issue by objecting and requesting an admonition.  Thus, the state

---

[55] *Id*. at 1547.

trial court and the Louisiana Supreme Court concluded that Welch failed to establish either prong of the *Strickland* test.

Defense counsel's decision not to seek a mistrial or admonition was deemed a strategic one under the circumstances, which included the fact that Welch opened the door to introduction of the evidence. *Geiger*, 540 F.3d at 309-10 (citing *Ward v. Dretke*, 420 F.3d 479, 491 (5th Cir.2005) (in deciding not to move for mistrial, counsel must balance the harm caused by the prosecutor's improper question against the possible implications of a new trial). As noted, counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Johnson*, 394 F.3d at 337 (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *see Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) ("Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed."); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir.1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."). The fact that counsel's trial strategy regarding introduction of Welch's prior arrests may not have been successful in deterring a guilty verdict (or in establishing Welch's credibility as a testifying witness) does not render his counsel ineffective. *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

Furthermore, as noted by the state trial court, Welch's voluntary testimony explaining the prostitution arrest was not so prejudicial to have warranted a mistrial.[56] Welch's counsel was not

---

[56] *Id.*

deficient in failing to move for a mistrial when Louisiana law would not support such a motion under the circumstances of his case.  Thus, counsel was not ineffective in failing to assert a meritless motion.  *See Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections.").

Welch has not established that his counsel provided ineffective assistance or that the state trial court's rulings on the issue are not entitled to due deference under the AEDPA.  The state courts' denial of relief was not contrary to or an unreasonable application of *Strickland*.  Welch is not entitled to relief on this claim.

### E.    Failure to Investigate and Interview Lewis

With respect to the issue of interviewing Lewis, the state trial court found that Welch could only produce for the hearing "unsubstantiated, multiple hearsay evidence to support his theory" that Lewis would have testified that Castle falsely implicated him (or that Castle actually falsely implicated him).[57]  Welch did not subpoena Lewis to the hearing and did not present any other credible evidence or witness to support his claim.  The state trial court also specifically found that Welch failed to present any credible evidentiary support for his claim that co-defendant Castle falsely implicated him.[58]  For these reasons, Welch failed to show that he was prejudiced even if the court assumed counsel's performance was deficient.[59]

---

[57] *Id.*

[58] *Id.* at 1547-48.  This finding was made in connection with Welch's claim that counsel also failed to find evidence to prove that Castle falsely implicated him, a claim that is not before this federal habeas court.

[59] *Id.* at 1547.

25

"'The failure to present [testimonial] evidence would not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997); *Williams v. Cockrell*, 31 F. App'x 832, 2002 WL 180359, at *3 (5th Cir. Jan. 4, 2002). Moreover, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)); *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008). To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day*, 566 F.3d at 538 (citing *Bray*, 265 F. App'x at 298).

Welch identifies the second victim, Teamaya Lewis, as a favorable witness, claiming claims that if counsel had interviewed and called her for trial, she would have testified that his co-defendant Castle falsely implicated him in the incident and murder. He claims that his counsel refused to speak with her because he did not want to look like he was picking on one of the victims. However, Lewis in fact testified at trial during the State's case in chief and was rigorously cross-examined by Welch's counsel.[60]

During her testimony, she described the assailant who killed Kenneth Garner, Jr., and testified that Welch had the same dreadlocks and matched the build of the person who hit and shot

---

[60] St. Rec. Vol. 2 of 4, at 669, Trial Transcript, 2/20/08.

Garner and later shot at her.[61]  She acknowledged that she did not know Welch and had not seen him until trial, but she was absolutely positive of the physical match.[62]  She also indicated that the second man, the one on her side of the bed, was of a similar build to the deceased co-defendant Corey Stovall, who had previously lived with her and Garner.[63]

Lewis also testified on cross-examination by Welch's counsel that she did not know Rodney Castle at all, before or after the shooting.[64] She testified that she did not recall telling police that she heard Garner call out the name "Jeezy," during the incident.[65] On redirect, she testified that she knew two people with that nickname, John Olsen and John Matthews.[66]

Lewis never varied from her description of the shooter or her assertion that Welch matched the physical appearance of the shooter whose face was covered.  Welch does not explain how a pretrial interview would have altered Lewis's consistent statements about the shooter or what different questioning counsel could have posed at trial.

Furthermore, Welch has not presented any court with evidence to contradict Lewis's trial testimony or to support his claim that she said Castle lied (or that Castle in fact lied).  Welch did not present any credible or substantiating evidence at the state post-conviction hearing to support his claim about Lewis or the falsity of Castle's implication.[67] After reviewing the trial and evidentiary hearing transcripts, this court must give deference to the factual findings made by the state courts in concluding that Welch's conclusory and unsupported claims failed to meet either prong of *Strickland*.  *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory

---

[61] *Id*. at 675-677, 683.
[62] *Id*. at 678, 687.
[63] *Id*. at 676.
[64] *Id*. at 679-80.
[65] *Id*. at 679.
[66] *Id*. at 686.
[67] *Id*. at 1547-48.

allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

For these reasons, the state courts' denial of relief was not contrary to or an unreasonable application of *Strickland*. Welch is not entitled to relief on this claim.

## VI.    <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Freddy Welch's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[68]

New Orleans, Louisiana, this <u>3rd</u> day of March, 2023.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[68] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.